RECEIVED
IN ALEXANDRIA, LA

FEB 1 4 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| EDUCATIONAL & TREATMENT COUNCIL, INC. | : | DOCKET NO. 06-1940 |
| VS. | : | JUDGE TRIMBLE |
| GRANITE STATE INSURANCE COMPANY | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is "Defendant Granite State Insurance Company's Motion for Summary Judgment" (doc. #23) wherein the mover seeks summary judgment in its favor because there is no genuine issue as to any material fact. The only issue in this matter is Plaintiff's claim for statutory penalties and attorneys' fees under Louisiana Revised Statutes 22:658 and 22:1220. The defendant, Granite State Insurance Company, seeks a ruling from the Court that it is not liable for statutory penalties and attorneys' fees pursuant to the aforementioned statutes because it did not act arbitrarily, capriciously or without probable cause in handling Plaintiff's claim. For the following reasons, the motion will be granted.

## FACTUAL STATEMENT

The following facts are not in dispute. Plaintiff owns two buildings in Lake Charles, Louisiana (the "Harbour House" and "the Outreach Center") that incurred property damage as a result of the impact of Hurricane Rita on or about September 24, 2005. Granite State Insurance Company ("Granite State") insured the buildings during the relevant time period. Upon receiving notice of Plaintiff's claims, Granite State sent an adjuster to survey the damage and begin adjusting Plaintiff's claim. The

claims were reassigned to another adjuster, and by December 2005 a tentative agreement was reached with Instar Services Group ("Instar"), Plaintiff's contractor, for remediation and reconstruction.

On January 12, 2006, Plaintiff submitted to Granite State a sworn proof of loss for $107,793.32. Plaintiff received payment for the partial property damage in that amount on January 20, 2006. On March 6, 2006, Plaintiff submitted to Granite State a sworn proof of loss for $129,599.79 based on Instar's estimate. The adjuster advised Plaintiff that it did not have to rely on Instar's estimates and was free to retain any contractor it wished. On March 16, 2006, Granite State issued a partial property damage payment in the amount of $96,199.79;[1] Plaintiff received payment on March 31, 2006.

On May 22, 2006, Plaintiff submitted to Granite State a new estimate in the amount of $340,920.66 for hurricane damages based on Plaintiff's new contractor, Property Restoration Company ("PRC").[2] Sometime between May 30, 2006 and June 8, 2006, the adjuster contacted Plaintiff to discuss the revised estimate. During that call, the adjuster requested additional information and documentation. The adjuster received the requested information and documentation on June 26, 2006. Granite State noted in their June 27, 2006 report that despite having received funds from Granite State, Plaintiff had not yet authorized repairs other than initial remediation and dry-out work. On July 10, 2006 the adjuster arranged a re-inspection of the building and a meeting with PRC and the Plaintiff to take place on July 12, 2006. Based on the re-inspection, the adjuster determined that the vastly increased estimate prepared by PRC reflected Plaintiff's failure to commence repairs for over eight

---

[1] In accordance with the policy, a $1,000.00 deductible was applied, and $32,400 in depreciation was withheld from replacement cost pending completion of repairs.

[2] The adjuster received the new estimate on May 23, 2006.

months. Plaintiff filed this suit on September 25, 2006. On or about September 27, 2006, the claim was transferred to another adjuster. The adjuster retained a building consultant to determine any additional amounts due Plaintiff that had not been included in the original Instar estimate. The building was re-inspected on October 5, 2006. The re-inspection again revealed that repairs had not yet begun despite Plaintiff having received approximately $200,000.00.

On November 29, 2006, the adjuster forwarded to Plaintiff his estimate of the damage which totaled $309,125.50; the revised estimates were also sent to PRC. Between December 27, 2006 and January 4, 2007, Plaintiff had several discussions with the adjuster and PRC regarding the revised estimate. PRC was also sending additional back up documentation to the building consultant for his consideration. On January 17, 2007, a revised estimate in the amount of $313,600.13 from the building consultant was e-mailed to Plaintiff. In that e-mail, the adjuster sought Plaintiff's acceptance of the new estimate. On January 18, 2007, Plaintiff e-mailed the adjuster and informed him that the revised estimate was acceptable except for some minor changes such as the tax rate. On January 23, 2007, Plaintiff received a check from Granite State for $25,000.00 for extra business expenses.

On January 26, 2007, the adjuster emailed to Plaintiff a statement of loss for the entire claim. On January 29, 2007, Plaintiff e-mailed the adjuster and informed him of a $25,000.00 error. The adjuster e-mailed Plaintiff the following day and reported that $25,000 had inadvertently been omitted. On March 28, 2007, Granite issued two checks for the balance of the actual cash value of the property damage in the amounts of $156,790.38 and $43,879.86;[3] Plaintiff received the checks on April 2, 2007 and April 3, 2007, respectfully. On August 8, 2007, Granite issued a check in the amount of $7,825.72

---

[3] Two separate buildings were involved, the Harbour House ($156,790.38) and the Outreach Center ($43,879.86).

as a supplemental payment for additional property damage found behind paneling.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[5] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[6] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[7] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[8] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[9] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable

---

[4] Fed. R.Civ. P. 56(c).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[6] *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

[7] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[8] *Anderson*, 477 U.S. at 249.

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

trier of fact could find for the non-moving party.[10] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[11]

## LAW AND ANALYSIS

Plaintiff alleges that Granite State "is in violation of La. R.S. 22:658(A)(3) which requires that "in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim <u>within thirty days after notification of loss by the claimant.</u>"[12] Plaintiff also alleges that Granite State is "answerable in damages to petitioner as a result of defendant's breach of its good faith duty to adjust petitioner's claim. . ." pursuant to La. R.S. 22:1220.[13] Plaintiff complains that Granite State failed to promptly and fairly adjust petitioner's claims within thirty (30) days after notification of loss, and failed to pay petitioner's damages within thirty (30) days after being provided with a satisfactory proof of loss.[14] Plaintiff alleges that Granite State's act and/or omissions were arbitrary, capricious and without cause.[15]

An insurer can be held liable in bad faith under either statute only upon a showing that the insurer acted arbitrarily, capriciously, or without probable cause.[16] This legal standard is measured against the

---

[10] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[11] *Anderson*, 477 U.S. at 249-50.

[12] Petition for damages, ¶ 4.

[13] *Id.* ¶ 5.

[14] *Id.* ¶ 6.

[15] *Id.*

[16] See *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012 (La. 2003); see also *Rovira v. LagoDa, Inc.*, 551 So.2d 790, 796 (La.App. 5th Cir. 1989), *writ denied*, 556 So.2d 36 (La.1990)(denying insured's claim for bad faith penalties because the insurer's refusal to pay was

facts known to the insurer at the time of its actions of which the insured complains.[17] The bad faith statutes are strictly construed, and Plaintiff bears the burden of proof.[18]

An arbitrary act is an act "based on random choice or personal whim, rather than any reason or system, . . ." and a capricious action is "given to sudden and unaccountable changes of behavior."[19] "Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action. . . ."[20]

Granite State maintains that Plaintiff lacks factual support for its bad faith claims; it argues that the record reflects that Granite State's handling of the claim centered on reasonable and legitimate questions as to the extent and causation of Plaintiff's losses. Hence, Granite State argues that it was not arbitrary, capricious or without probable cause in handling Plaintiff's claims.

Granite State points to the following to justify its handling of the claims: (1) Granite State, through its adjuster, was on site within a few day after having received notice of the claim to survey the damage and begin adjusting Plaintiff's claim, (2) Granite State issued a payment shortly after Plaintiff submitted a sworn proof of loss,[21] (3) Plaintiff hired a new contractor who submitted a revised estimate that was vastly greater than any amounts previously indicated; the revised estimate was nearly two-and-

---

not arbitrary or capricious).

[17] *Reed*, 857 So.2d at 1021.

[18] *Franklin Ford v. Golemi, Albrecht Ins.*, 522 So.2d 1283, 1288 (La.App. 5th Cir. 1988), *writ denied*, 530 So.2d 83 (La.1988).

[19] *Reed*, 857 So.2d at 1020.

[20] *Id.* at 1021.

[21] Plaintiff submitted the sworn proof of loss on March 6, 2006, Granite State issued payment in that amount on March 16, 2006, which was received by Plaintiff on March 31, 2006.

a-half times the original estimate, (4) Granite State's adjuster determined that Plaintiff had not in fact commenced any of the contemplated and agreed-upon repairs, contrary to Plaintiff's prior representations, and despite having been advanced a substantial amount of money, and (5) after re-inspection, Granite State questioned whether or not Plaintiff had attempted to mitigate its losses.

After Granite State reinspected the property, a new adjuster was assigned and a building consultant was brought in because of the greatly increased revised estimate and Granite State's concern that Plaintiff had failed to mitigate its losses by not authorizing the repairs. This, in turn, caused Granite State to require additional information and documentation from PRC, as well as seeking the assistance of a building consultant to further investigate the increased claim. The Court concludes that Granite State's actions were in good faith and their challenge as to the extent and causation of Plaintiff's loss was reasonable. Accordingly, the Court finds that Granite State's acts and/or omissions were not arbitrary, capricious, or without probable cause, and Granite State cannot be held liable for penalties and/or attorneys' fees pursuant to Louisiana Revised Statutes 22:658 and 22:1220.

## **CONCLUSION**

Based on the foregoing, the motion for summary judgment will be granted and the action will be dismissed with prejudice.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 14th day of February, 2008.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

7